**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**VALDOSTA DIVISION**

| | | |
|---|---|---|
| **PATRICIA PITTS** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **Civil Action No.** |
| | : | **7:06-CV-62-HL** |
| **WILD ADVENTURES, INC.,** | : | |
| | : | |
| **Defendant.** | : | |
| | : | |
| | : | |

# ORDER

Before the Court is Defendant's Motion for Summary Judgment (Doc. 19). For the following reasons, Defendant's Motion is granted.

## I.    FACTS

As an initial matter, Local Rule 56 requires that a party moving for summary judgment attach to the motion "a separate and concise statement of the material facts to which [it] contends there is no genuine issue to be tried." Middle District of Georgia, Local Rule 56. The nonmoving party is then required to respond to each of the movant's numbered material facts. Id. All material facts not controverted by the nonmoving party are deemed admitted. Id. In this case, Defendant complied with Local Rule 56 by attaching its Statement of Material Facts to its Motion. Plaintiff, however, did not respond to each of Defendant's numbered material facts. Instead, Plaintiff filed her own Statement of Material Facts and attached an affidavit

1

from herself. Moreover, Plaintiff did not file a response brief to Defendant's Motion for Summary Judgment.

As a result of Plaintiff's failure to comply with Local Rule 56, all material facts set forth in Defendant's Statement of Material Facts are deemed admitted. However, not every statement of material fact will be accepted by this Court. Only those statements that are supported by the record will be adopted. Furthermore, statements in the form of issues or legal conclusions (rather than material facts) will not be considered by the Court. Last, this Court will not accept Defendant's statements to the extent that Plaintiff controverts them in her affidavit, which she filed contemporaneously with her Statement of Material Facts.[1] With this standard in mind, the facts are as follows.

Defendant Wild Adventures Inc. operates a theme park in Valdosta, Georgia. Plaintiff Patricia Pitts is an African-American female who began working at the theme park in August 2000 as a member of the Guest Services staff. (Def.'s SOMF ¶ 2). In March 2001 she was promoted to Guest Services Team Leader, and in May 2001 she was promoted to Guest Services Supervisor. (Id.).

In November 2002 Cheryl Tucker, a white female and the Guest Services Manager at the time, told Plaintiff that she disapproved of her cornrow hairstyle. (Pla.'s Aff. ¶¶ 4, 5). Tucker told Plaintiff that she should get her hair done in a "pretty style." (Id. at ¶ 5). Plaintiff attempted to comply with Tucker's request by having

---

[1]Plaintiff's Statement of Material Facts is based entirely on her affidavit.

extensions placed in her hair and styled into "two strand twists." (Id. at ¶ 7). Again, Tucker disapproved of Plaintiff's hairstyle, which had the look of dreadlocks. (Id.). This time Plaintiff refused to have her hair restyled because at the time Defendant did not have a written policy regarding acceptable hairstyles. (Id. at ¶¶ 8, 9). On November 6, 2002, Defendant issued a memo that prohibited "dreadlocks, cornrows, beads, and shells" that are not "covered by a hat/visor." (Def.'s SOMF ¶ 3). The memo was issued to all managers and was posted in the company's break room. (Id. at ¶ 7). Plaintiff believed that this grooming policy was racially discriminatory because it prohibited only "Afrocentric" hairstyles. (Pla.'s Aff. ¶ 10). As a result, she complained about the policy to Defendant's Human Resources Manager, Todd Douthit. (Id. at ¶ 11). When she did not receive an acceptable response from Douthit, Plaintiff wrote a letter to the owner of Wild Adventures, Inc., Kent Buescher. (Id. at ¶ 13). In the letter Plaintiff said that she believed the grooming policy "interfered with the expression of [her] heritage as an African-American." (Id.). No response was ever made to Plaintiff's letter. (Id.).

After Plaintiff complained about Defendant's grooming policy, she was written up several times for various disciplinary violations. On November 17, 2002, Plaintiff was written up for failing to follow instructions because she did not verify that the schedules were ready for the following day.[2] (Def.'s SOMF ¶ 14). On January 4,

---

[2]Plaintiff does not dispute that she was written up, nor does she dispute that she did not have the schedules ready for the following day. She does, however, assert that it had always been deemed acceptable for the schedules not to be ready on the evening prior to the day in

2003, Plaintiff did not follow instructions to leave the cash drawers open when the park was closed, and she was again written up for failing to follow instructions and informed that "any other further write-ups or verbal warnings could lead to further disciplinary action or termination." (Id. at ¶ 15). Plaintiff was written up again on January 22, 2003. (Id. at ¶ 16). This time the write-up was based on Plaintiff spreading gossip and causing conflict within the Guest Services Department. (Id.). Plaintiff was informed that "this is a final write-up" and "[a]ny further disciplinary action will lead to termination." (Id.). In addition to these disciplinary violations, Defendant alleges that management had reason to believe that sometime between May 2001 and June 2003 Plaintiff gave a wallet from lost and found containing $500 to a friend and falsely claimed that he properly identified the wallet.[3] (Id. at ¶¶ 17, 18). Based on the wallet incident, management began to question Plaintiff's honesty. (Id. at ¶ 18).

In May 2003 Tucker resigned as Guest Services Manager and Defendant began a search for her replacement (Id. at ¶ 19). The job opening was listed in the Valdosta Daily Times and listed "customer service, computer, multitasking,

---

question. (Pla.'s Aff. ¶ 18).

[3]Plaintiff alleges that she returned the wallet to its rightful owner. (Pla.'s Aff. ¶ 24). Thus, she alleges that Defendant should not have been suspicious of Plaintiff's actions. But Plaintiff's assertion that she did not engage in any wrongful conduct does not controvert Defendant's assertion that it had a genuine belief that Plaintiff's actions were suspicious. Defendant has pointed to specific facts in the record that support its contention that its belief was genuine, and Plaintiff has not pointed to anything in the record that controverts this assertion. (Def.'s SOMF ¶ 18).

scheduling, [and] management experience" as requirements for the job. (Id.).

Plaintiff applied for the job, as did Jay Cleveland, a Human Resources Assistant at

Wild Adventures. (Id. at ¶ 20). Plaintiff did not have a college or postgraduate

degree and her only prior management experience was as a "management

assistant" at JCPenney. (Id. at ¶ 24). On the other hand, Cleveland was a retired

Lieutenant-Colonel from the United States Army who had both a bachelor's degree

and an M.B.A. (Id. at ¶ 28). He also had management experience working as the

principal of a school. (Id.). According to Defendant, it promoted Cleveland instead

of Plaintiff because Cleveland was more qualified. (Id. at ¶ 26).

Shortly after Cleveland was promoted, he reported to other members of

management that Plaintiff was uncooperative and not responsive to his requests.[4]

(Id. at ¶ 29). In addition, Plaintiff received a verbal warning on August 6, 2003, for

losing her keys on July 30, 2003. (Id. at ¶ 30). It was Plaintiff's responsibility to

open the park, and she was unable to fulfill this responsibility due to her inability to

find her keys on the day in question. (Id.; Pla.'s Dep. Ex. 8). The verbal warning

was documented in writing.[5] (Pla.'s Dep. Ex. 8). Later in August, Buescher received

a report from Candice Rentz, a member of the Guest Services staff, that Plaintiff had

_____

[4]Plaintiff disputes the fact that she was uncooperative. (Pla.'s Aff. ¶ 32). But she does
not dispute that Cleveland reported to other members of management that she was
uncooperative.

[5]Plaintiff does not dispute that she lost her keys and was unable to open the park on the
day in question.

allowed customers to enter the park without paying on two separate occasions in violation of park policy.[6]  (Def.'s SOMF ¶ 31).  Rentz prepared a written statement documenting both incidents.  (Id.; Buescher Decl. Ex. 1).

On September 5, 2003, Douthit, Cleveland, and Buescher met with Plaintiff and informed her that her employment was being terminated.  According to Defendant, Plaintiff was terminated because of her lengthy disciplinary record, her reported refusal to cooperate with her manager, and reports that Plaintiff had permitted customers to enter the park without paying.  (Def.'s SOMF ¶ 33).  Subsequently, Plaintiff filed suit in this Court on July 20, 2006.  In her Complaint (Doc. 1), Plaintiff asserts claims of race discrimination and unlawful retaliation under Title VII and 42 U.S.C. § 1981 based on Defendant's grooming policy prohibiting dreadlock and cornrow hairstyles, Defendant's failure to promote Plaintiff to Guest Services Manager, and Defendant's decision to terminate her employment.  Plaintiff's Complaint also contains a claim for intentional infliction of emotional distress.  On September 14, 2007, Defendant filed this Motion for Summary Judgment.

## II.    DISCUSSION

### A.    Summary Judgment Standard

Summary judgment must be granted if "the pleadings, the discovery and

---

[6]Plaintiff disputes the allegation that she permitted customers to enter the park without paying; however, she does not dispute Defendant's assertion that Buescher received a report that Plaintiff had permitted customers to enter without paying.

disclosure materials on file, and any affidavits show that there is no genuine issue as to any material facts and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). A genuine issue of material fact arises only when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). When considering a motion for summary judgment, the Court must evaluate all of the evidence, together with any logical inferences, in the light most favorable to the nonmoving party. Id. at 254-55. The Court may not, however, make credibility determinations or weigh the evidence. Id. at 255; see also Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000).

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) (internal quotation marks omitted). If the moving party meets this burden, the burden then shifts to the nonmoving party to go beyond the pleadings and present specific evidence showing that there is a genuine issue of material fact, or that the nonmoving party is not entitled to a judgment as a matter of law. Id. at 324-26. This evidence must consist of more than mere conclusory

allegations.  See Avirgan v. Hull, 932 F.2d 1572, 1577 (11th Cir. 1991).  Under this scheme summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex, 477 U.S. at 322.

**B.    Title VII Claims**

Before filing suit under Title VII, a plaintiff must file a charge of discrimination with the EEOC within either 180 or 300 days[7] "after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e-5(e)(1); Wilkerson v. Grinnell Corp., 270 F.3d 1314, 1317 (11th Cir. 2001).  In this case, there is no evidence that Plaintiff ever filed a charge of discrimination with the EEOC.  As a result, Defendant is entitled to summary judgment on Plaintiff's Title VII claims because Plaintiff failed to exhaust her available administrative remedies.

**C.    § 1981 Claims**

Plaintiff has also asserted disparate treatment and retaliation claims under 42 U.S.C. § 1981.  Employment discrimination claims brought under Title VII and § 1981 have the same requirements of proof and use the same analytical framework.

---

[7]The 300-day time period is utilized in those states that have entities with the authority to grant or seek relief with respect to unlawful employment practices and an employee files a grievance with that agency; in all other states, known as "nondeferral states," the charge must be filed within 180 days.  Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 109 (2002). Because Georgia is a nondeferral state, the 180-day time period applies.  Watson v. Blue Circle, Inc., 324 F.3d 1252, 1258 (11th Cir.2003).

Standard v. A.B.E.L. Servs. Inc., 161 F.3d 1318, 1330 (11th Cir. 1998).  Unlike Title VII, however, § 1981 does not have an exhaustion of administrative remedies requirement, and therefore, Plaintiff's failure to file an EEOC charge is not fatal to her § 1981 claims.  See  Barnes v. Dalton, 158 F.3d 1212, 1214 (11th Cir. 1998). This Court will address Plaintiff's § 1981 claims in turn.

### 1.  Disparate Treatment

Plaintiff alleges that she was discriminated on the basis of race when (1) she was required to comply with a racially discriminatory grooming policy, (2) she was not promoted to the position of Guest Services Manager, and (3) she was terminated.

An employment discrimination plaintiff may attempt to show unlawful discrimination through either direct or circumstantial evidence.  Schoenfeld v. Babbitt, 168 F.3d 1257, 1266 (11th Cir. 1999).  Direct evidence of discrimination is evidence that "'if believed, proves [the] existence of [a] fact in issue without inference or presumption.'" Id. (quoting Burrell v. Bd. of Trustees of Ga. Military Coll., 125 F.3d 1390, 1393 (11th Cir. 1997)) (alterations in original).  Direct evidence consists only of "'the most blatant remarks, whose intent could be nothing other than to discriminate' on the basis of some impermissible factor."  Id. (quoting Carter v. City of Miami, 870 F.2d 578, 582 (11th Cir. 1989)).

In the absence of direct evidence, an employment discrimination plaintiff must establish her discrimination claim by relying on the framework established by the

Supreme Court in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973), and <u>Tex. Dep't of Cmty. Affairs v. Burdine</u>, 450 U.S. 248 (1981). Under this framework, a Title VII claimant must first establish a prima facie case of discrimination by showing that: (1) she is a member of a protected class; (2) she suffered an adverse employment action; (3) similarly situated employees outside of her protected class were treated more favorably; and (4) she was qualified to do the job. <u>Burke-Fowler v. Orange County, Fla.</u>, 447 F.3d 1319, 1323 (11th Cir. 2006). The elements of a prima facie case vary depending on the factual circumstances and the type of claim asserted. <u>Clark v. Coats & Clark, Inc.</u>, 990 F.2d 1217, 1224 n.1 (11th Cir. 1993). In a failure to promote case, the plaintiff must establish that: (1) she is a member of a protected class; (2) she was qualified and applied for the promotion; (3) she was not promoted; and (4) someone outside her protected class was promoted.[8] <u>Walker v. Mortham</u>, 158 F.3d 1177, 1186, 1193 (11th Cir. 1998). In a termination case, the plaintiff must prove that: (1) she is a member of a protected class; (2) she was qualified for the position; (3) she suffered an adverse employment action; and (4) she was replaced by a person outside her protected class or was treated less favorably than a similarly-situated individual outside her protected class. <u>Maynard</u>

---

[8]There is an intracircuit split in the Eleventh Circuit as to whether the fourth element of a plaintiff's prima facie case in a failure to promote case requires the plaintiff to show that the employee who received the promotion was equally or less qualified than the plaintiff. For the reasons stated in <u>Ferguson v. Ga. Dept. of Corrections,</u> 428 F. Supp. 2d 1339, 1355 n.21 (M.D. Ga. 2006), this Court does not require that the plaintiff making this showing as part of her prima facie case; the plaintiff need only show that someone outside her protected class received the promotion.

v. Bd. of Regents of Div. of Univs. of Fla. Dept. of Educ. ex rel. Univ. of S. Fla., 342 F.3d 1281, 1289 (11th Cir. 2003).

Once the plaintiff has established a prima facie case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its employment action.[9]  Burke-Fowler, 447 F.3d at 1323.  If the defendant meet this burden, the burden shifts back to the plaintiff to show that the defendant's proffered reason for the adverse action is pretextual.  Id.  The plaintiff can prove pretext "'either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.'"  Jackson, 405 F.3d at 1289 (quoting Tex. Dep't of Cmty. Affairs, 450 U.S. at 256).  Because Plaintiff has produced no direct evidence of discrimination, she must establish her disparate treatment claims by relying on the McDonnell Douglas burden shifting framework.

### a.  Grooming Policy

Plaintiff's claim that she was discriminated against on the basis of race when she was required to comply with Defendant's grooming policy is without merit.  Grooming policies are typically outside the scope of federal employment discrimination statutes because they  do not discriminate on the basis of immutable characteristics.  In Willingham v. Macon Tel. Pub. Co., 507 F.2d 1084 (5th Cir.

---

[9]The defendant's burden at this stage is a burden of production.  See Jackson v. State of Ala. State Tenure Comm'n, 405 F.3d 1276, 1289 (11th cir. 2005).

1975),[10] the former Fifth Circuit decided one of the leading cases on this topic. The issue in Willingham was whether an employer grooming policy that prescribed different hair lengths for males and females constituted sex discrimination. Id. at 1090-92. The former Fifth Circuit concluded that Title VII's objective was to achieve equal employment opportunities for members of protected groups, and "[e]qual employment opportunity may be secured only when employers are barred from discriminating on the basis of immutable characteristics, such as race and national origin." Id. at 1091. Hair length is not an immutable characterisic, and therefore, the court held that the employer's grooming policy did not constitute sex discrimination. Id. While the court recognized that Title VII also prohibited employers from discriminating on the basis of certain fundamental rights, the court concluded that a policy prohibiting male employees from wearing long hair does not implicate a fundamental right. Id. Such a policy relates "more closely to the employer's choice of how to run his business than to equality of employment opportunity." Id.

Since Willingham, numerous courts have relied on the former Fifth Circuit's reasoning and concluded that an employer grooming policy is permissible as long as it does not discriminate on the basis of immutable characteristics or certain fundamental rights. See, e.g., Rogers v. American Airlines, 527 F. Supp. 229 (S.D.N.Y. 1981); Wofford v. Safeway Stores, Inc., 78 F.R.D. 460 (N.D. Cal. 1978);

---

[10]Decisions of the United States Court of Appeals for the Fifth Circuit handed down prior to October 1, 1981 are binding precedent in the Eleventh Circuit. Bonner v. City of Pritchard, 661 F.2d 1206, 1207 (11th Cir. 1981).

Thomas v. Firestone Tire & Rubber Co., 392 F. Supp. 373 (N.D. Tex. 1975). For example, in Rogers the Southern District of New York was confronted with an issue identical to the one before this Court: whether an employer grooming policy that prohibits employees from wearing an all-braided hairstyle constitutes race discrimination under Title VII and § 1981. 527 F. Supp. at 231. The plaintiff in Rogers argued that the employer's grooming policy discriminated against her on the basis of race because it prohibited her from wearing her hair in cornrows. Id. at 231-32. Citing Willingham, the Southern District of New York rejected the plaintiff's claim because her employer's grooming policy did not discriminate on the basis of an immutable characteristic or a fundamental right. Id. The court noted that a grooming policy prohibiting an "Afro/bush style" might constitute employment discrimination because such a policy would prohibit a natural hairstyle that is tied to an immutable characteristic. Id. at 232. But an all-braided hairstyle is not an immutable characteristic. Id. It is an "easily changed characteristic, and, even if socioculturally associated with a particular race or nationality, is not an impermissible basis for distinctions in the application of employment practices by an employer." Id. (internal quotations omitted); see also McBride v. Lawstaf, Inc., 1996 WL 755779, at *2 (N.D. Ga. 1996) ("As a matter of law, an employer's grooming policy prohibiting a braided hairstyle is not 'an unlawful employment practice" as defined by [Title VII]."); Carswell v. Peachford Hosp., 26 EPD 32,012 (N.D. Ga. 1981) (holding that employer grooming policy that prohibited employees from wearing beads in their hair did not

constitute race discrimination under § 1981 because the policy did not discriminate on the basis of an immutable characteristic).

In this case, Plaintiff argues that Defendant's grooming policy is racially discriminatory because it prohibits "Afro-centric hairstyles" such as dreadlocks and cornrows. Plaintiff's argument is without merit. Section 1981 prohibits discrimination on the basis of the immutable characteristics of race. Dreadlocks and cornrows are not immutable characteristics, and an employer policy prohibiting these hairstyles does not implicate a fundamental right. The fact that the hairstyle might be predominantly worn by a particular protected group is not sufficient to bring the grooming policy within the scope of § 1981's prohibitions. Moreover, Plaintiff has not argued that the policy was applied in a racially discriminatory manner. On its face, the policy applies to all races and there is no evidence that the policy was only enforced against African-Americans. As a result, Defendant is entitled to summary judgment on Plaintiff's disparate treatment claim related to the grooming policy.[11]

### b. Promotion

Plaintiff has established a prima facie case on her failure to promote claim.[12]

---

[11]Plaintiff testified in her deposition that women in Guest Services were allowed to wear skirts until a change in the dress code policy. Plaintiff appears to allege that the new policy prohibiting her from wearing skirts constituted sex discrimination. Claims of sex discrimination are outside the scope of § 1981. St. Louis v. Alverno College, 744 F.2d 1314, 1317 (7th Cir. 1984). As a result, to the extent that Plaintiff alleges sex discrimination based on the dress code, Defendant is also entitled to summary judgment on this claim.

[12]It is worth noting that Plaintiff did eventually comply with the grooming policy. Thus, her failure to promote and termination claims are based strictly on her race and not on a failure to

In response, Defendant has articulated three legitimate, nondiscriminatory reasons for why it promoted Cleveland to Guest Services Manager instead of Plaintiff. One of the proffered reasons is that Cleveland was more qualified than Plaintiff. Plaintiff attempts to show that this reason is pretext by asserting that she was more qualified for the job in question. A plaintiff in an employment discrimination case, however, cannot show pretext by merely showing that she was more qualified than the employee who actually received the promotion. Cooper v. Southern Co., 390 F.3d 695, 732 (11th Cir. 2004). Disparities in qualifications can only be used to show pretext if those disparities are "'of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question.'" Id. (quoting Lee v. GTE Florida, Inc., 226 F.3d 1249, 1254 (11th Cir. 2000)).

Here, Plaintiff has not offered any evidence showing that she is "'so clearly more qualified for the position than [Cleveland] that a reasonable juror could infer discriminatory intent from the comparison.'" Id. (quoting Lee, 226 F.3d at 1255). Cleveland possessed both a bachelor's degree and an M.B.A., and he had previous management experience as the headmaster of a private school and as an officer in the military. Conversely, Plaintiff had no college degree, and her only prior management experience was as a management assistant at JCPenney. Plaintiff's only attempt to demonstrate that she was more qualified is the assertion in her

_____

comply with the grooming policy.

affidavit that she fulfilled the required job qualifications that were contained in the job listing. (Pla.'s Aff. ¶ 28). But the fact that Plaintiff was qualified for the position in question does not establish that she was more qualified, and it definitely does not meet the stringent standard for showing pretext through evidence of disparities in qualifications. Accordingly, Defendant is entitled to summary judgment on Plaintiff's failure to promote claim.

### c. Termination

Defendant is entitled to summary judgment on Plaintiff's termination claim because Plaintiff cannot meet the fourth element of the prima facie case. The fourth element of a prima facie case in a termination claim requires that the plaintiff show that she was replaced by a person outside her protected class or that she was treated less favorably than a similarly-situated individual outside her protected class. Maynard, 342 F.3d at 1289. Plaintiff has not established that she was replaced by a member outside her protected class, and she has not established that similarly-situated individuals outside her protected class were treated more favorably. As a result, Defendant is entitled to summary judgment on Plaintiff's termination claim.

### 2. Retaliation

Plaintiff alleges that she was retaliated against when she voiced opposition to Defendant's grooming policy. Plaintiff does not allege which adverse employment actions serve as the basis for her retaliation claim. It appears that Plaintiff alleges that she was retaliated against when (1) she was forced to comply with the grooming

policy,[13] (2) she was not promoted to Guest Services Manager, and (3) she was terminated.

In the absence of direct evidence of retaliation, the McDonnell-Douglas burden shifting framework that is used to analyze disparate treatment claims is also used to analyze retaliation claims. The plaintiff must first establish a prima facie case of retaliation by showing that: (1) she engaged in statutorily protected activity; (2) she suffered a materially adverse action; and (3) there is a causal connection between the two events. Goldsmith v. Bagby Elevator Co., 513 F.3d 1261, 1277 (11th Cir. 2008). Once the plaintiff makes this showing, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason. Id. If the employer does so, the plaintiff bears the burden of proving that the reason provided by the employer is a pretext for prohibited retaliatory conduct. Id. Plaintiff has introduced no direct evidence of retaliation, and therefore, she must establish her retaliation claim by relying on this burden shifting framework.

Here, Plaintiff's retaliation claim fails because she cannot meet the first element of the prima facie case. The first element requires that Plaintiff prove that she engaged in statutorily protected activity. Weeks v. Harden Mfg. Corp., 291 F.3d 1307, 1311-12 (11th Cir. 2002). The Eleventh Circuit has held that a plaintiff satisfies this element if she "'had a good faith, reasonable belief that the employer

---

[13]This puzzling allegation appears in paragraph 21 of Plaintiff's affidavit where Plaintiff alleges she was forced to comply with the grooming policy because she was being retaliated against for opposing it.

was engaged in unlawful employment practices.'" Id. (quoting Little v. United Tech., Carrier Transicold Div., 103 F.3d 956, 960 (11th Cir. 1997)).  Thus, this element has both a subjective and an objective component.  Id.  A plaintiff must show that she subjectively believed that the employer was engaged in unlawful employment practices, and that this belief was objectively reasonable.  Id.  The objective reasonableness of the belief is judged by the existing legal authority at the time of the alleged protected activity, and plaintiffs are charged with substantive knowledge of the law.  See Harper v. Blockbuster Entertainment Corp., 139 F.3d 1385, 1388 & n.2 (11th Cir. 1998).

This Court does not doubt that Plaintiff had a good faith belief that Defendant's grooming policy constituted an unlawful employment practice.  But however genuine this belief may have been, it was not objectively reasonable in light of existing case law.  As the cases cited above demonstrate, it was well-established at that time of Plaintiff's alleged protected activity that § 1981 only prohibits discrimination based on the immutable characteristics of race.  Dreadlocks and cornrows are not immutable characteristics.  Instead, they are hairstyles that an individual chooses to wear.  Moreover, Defendant's grooming policy did not implicate a fundamental right.  There is also no evidence that Defendant enforced the policy in a racially discriminatory manner.  As a matter of law, it was unreasonable for Plaintiff to believe that Defendant's policy prohibiting dreadlock and cornrow hairstyles violated § 1981, and therefore, Defendant is entitled to summary judgment on Plaintiff's

retaliation claim. <u>See</u> <u>McBride</u>, 1996 WL 755779, at *2 (dismissing plaintiff's retaliation claim because it was unreasonable for plaintiff to believe that defendant's policy prohibiting braided hairstyles violated Title VII).

.   **D.    Intentional Infliction of Emotional Distress**

Plaintiff has asserted a claim for intentional infliction of emotional distress. A claim for intentional infliction of emotional distress has four elements: (1) the conduct must be intentional or reckless; (2) the conduct must be extreme and outrageous; (3) there must be a causal connection between the wrongful conduct and the emotional distress; and (4) the emotional distress must be severe. <u>Bridges v. Winn-Dixie Atlanta, Inc.</u>, 176 Ga. App. 227, 230, 335 S.E.2d 445, 447-48 (1985). "'Whether a claim rises to the requisite level of outrageousness and egregiousness to sustain a claim for intentional infliction of emotional distress is a question of law.'" <u>Phinazee v. Interstate Nationalease, Inc.</u>, 237 Ga. App. 39, 39, 514 S.E.2d 843, 845 (1999) (quoting <u>Taylor v. Gelfand</u>, 233 Ga. App. 835, 837, 505 S.E.2d 222, 224 (1998)). Liability for this tort exists only "'where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" <u>Id.</u> at 39-40, 514 S.E.2d at 845 (quoting <u>Bowers v. Estep</u>, 204 Ga. App. 615, 618, 420 S.E.2d 336, 339 (1992)).

In this case, it is unclear which of Defendant's actions are alleged to constitute extreme and outrageous conduct. Construing Plaintiff's Complaint broadly, this

Court finds that Plaintiff has alleged that Defendant committed the tort of intentional infliction of emotional distress when (1) Tucker referred to Plaintiff's cornrow hairstyle as not being pretty, (2) Defendant promoted Cleveland instead of Plaintiff to Guest Services Manager, and (3) Defendant terminated Plaintiff's employment.

Plaintiff's intentional infliction of emotional distress claim fails as a matter of law because she cannot establish that Defendant's conduct was extreme and outrageous.  Tucker's comment about Plaintiff's hairstyle clearly does not rise to the level of extreme and outrage conduct.  See id. at 41, 514 S.E.2d at 846 (stating that mere insults and indignities do not constitute extreme and outrageous conduct).  In addition, Defendant's conduct in failing to promote Plaintiff and terminating her employment was not extreme and outrageous.  Absent a racial or other motive in violation of public policy, "an employer in Georgia may discharge an at-will employee for any reason or no reason."  Id.; see also Reid v. Sears, Roebuck and Co., 790 F.2d 453, 462 (6th Cir. 1986) ("Where the actor does no more than insist upon his own legal rights, no liability [for intentional infliction of emotional distress] will be imposed." (internal quotations omitted)).  Having determined that Plaintiff has failed to present evidence creating a genuine issue of material fact that Defendant's promotion and termination decisions were based on race, Defendant is entitled to summary judgment on Plaintiff's intentional infliction of emotional distress claim. See Phinazee, 237 Ga. App. at 41, 514 S.E.2d at 846 (holding that the same facts that were insufficient to make out a prima facie case of racial discrimination in a Title

VII suit were, as a matter of law, insufficient to create a genuine issue of material fact in a claim for intentional infliction of emotional distress).

III. **CONCLUSION**

For the foregoing reasons, Defendant's Motion for Summary Judgment is granted.


**SO ORDERED**, this the 25th day of April, 2008.


*s/ Hugh Lawson*
**HUGH LAWSON, Judge**

dhc